1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LOLITA RENE McMILLON,

11            Plaintiff,                    No. CIV S-10-591 CMK (TEMP)

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
              Defendant.          MEMORANDUM OPINION AND ORDER
15
     _____/
16
              Plaintiff brings this action for judicial review of a final decision of the

17
     Commissioner of Social Security under 42 U.S.C. § 405(g).  Pursuant to the written consent of

18
     all parties, this case is before the undersigned as the presiding judge for all purposes, including

19
     entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion

20
     for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 20).

21
     For the reasons discussed below, the court will deny plaintiff's motion for summary judgment

22
     and grant defendant's cross-motion for summary judgment.

23
24
25
26

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for supplemental security income ("SSI") on September 13, 2006 alleging an onset of disability on January 1, 2003 primarily due to mental impairments. Certified administrative record ("CAR") 93-96, 107, 181. Specifically, plaintiff claims disability due to depression, mood disorder, and post traumatic stress disorder ("PTSD").[2] CAR 107, 181. Plaintiff's claim was denied initially and upon reconsideration. CAR 64-65. Plaintiff requested an administrative hearing, which was held on August 6, 2008 before Administrative Law Judge ("ALJ") Theodore T.N. Slocum. CAR 31-63, 80. In an October 22, 2008 decision, the ALJ concluded that plaintiff was not disabled[3] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Plaintiff also suffers from several physical impairments, including arthritis, Hepatitis C, hypertension, and obesity. CAR 12, 181. Plaintiff's physical impairments and related limitations are not at issue here.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

1.   The claimant has not engaged in substantial gainful activity since September 13, 2006, the application date.

2.   The claimant has the following severe impairments: arthritis, Hepatitis C, hypertension, obesity, depression and mood disorder.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform significant range of light work as defined in 20 CFR 416.967(b).  She is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours in an eight-hour day with normal breaks; sit for six hours in an eight-hour day; and occasionally perform all postural activities other than climbing ramps and stairs which can be frequent.  She is unable to push/pull with her lower extremities and is precluded from working with ladders, ropes, scaffolding, hazardous machinery and unprotected heights.  She is to avoid concentrated exposure to extreme cold and heat, humidity, respiratory irritants or poor ventilation and moderate exposure to vibrations.  She is not significantly limited in performing one/two-step work tasks and experiences slight limitations in concentration, persistence and pace and tasks associated with day-to-day work as attendance and moderate limitations in relating to supervisors and co-workers and in adapting to the stresses of normal work environments.  She is precluded from complex tasks that include personal interaction.

5.   The claimant is unable to perform any past relevant work.

6.   The claimant was born on March 30, 1957 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.   The claimant has an 11th grade limited education and is able to communicate in English.

8.   The claimant's past relevant work is unskilled and semi-skilled.

9.   Considering the claimant's age, education, work experience, and

---

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    residual functional capacity, there are jobs that exist in significant
     numbers in the national economy that the claimant can perform.

2

3    10.    The claimant has not been under a disability, as defined in the
            Social Security Act, since September 13, 2006, the date the
            application was filed.

4

5    CAR 7-19.  After the Appeals Council declined review on January 15, 2010, this appeal

6    followed.  CAR 1-3.

7                              **II.  STANDARD OF REVIEW**

8            The court reviews the Commissioner's final decision to determine whether it is:

9    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

10   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

11   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

12   (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

13   conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

14   both the evidence that supports and detracts from the Commissioner's conclusion, must be

15   considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

16   Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

17   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

18   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

19   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

20   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

21   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

22   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

23   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

24   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

25   Cir. 1988).

26

                                            4

## III.  DISCUSSION

Plaintiff argues that: A. The ALJ improperly omitted a material limitation from the hypothetical posed to the vocational expert; B. The ALJ failed to properly consider the treating physicians' opinions; and C. The Appeals Council erred in failing to remand for a further hearing on additional evidence obtained after the ALJ's hearing.

### A.    VOCATIONAL EXPERT TESTIMONY

Plaintiff contends that the ALJ erred in omitting a material limitation from the hypothetical posed to the vocational expert ("VE") and by impeding plaintiff's counsel from questioning the VE about this limitation.  More specifically, plaintiff argues that the VE should have been questioned regarding State Agency physician Dr. Lon Gottschalk's finding in his December 1, 2006 mental residual functional capacity assessment ("MRFCA") that plaintiff was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  CAR 223.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At the hearing, the following exchange occurred between the ALJ and the VE, Michael Stinson:

Q.    Okay, that's the, that's the hypothetical, sir.

A.   What about number 11, the ability to complete a normal workday and workweek without interruption from –

Q.   I'm, I'm sorry?

A.   There's another one I was just wondering if, if there is a rating on your hypothetical.  That was about the ability to complete a normal workweek without interruption that's performed at a consistent pace.

Q.   There is not, in this hypothetical.

A.   Okay.

CAR 56.  Later during the hearing, plaintiff's attorney further questioned the VE:

Q.   Okay.  You had asked the Judge, with respect to his hypothetical, whether or not she would have any limitations with respect to, I believe it's essentially, showing up every day.

A.   Yes.  I did ask that.

Q.   And, and would that have an impact -- depending on how that was rated, would that have an impact on these three positions?

A.   Well, I think the Judge's response was, that wasn't quite the hypothetical.

VE:   Is that correct?

ALJ:   If you've got what the back-up was to that, Counsel, you can cite it.  We're not allowed  -- we're, we're told not to use those checkboxes anymore.

ATTY: Oh, okay.

ALJ:   Okay?  Now, some --

ATTY: Well, well, he, he had brought it up.

ALJ:   No, he's, he's brought it up.  I don't have it available, because I, I no longer use that.  But if, if you've got it from that MRFCA, it's up to you as to whether or not you use what's --

ATTY: Okay.  I don't.

ALJ:   Okay.

ATTY: I don't.  I, I have nothing further, Mr. Stinson.  Thank you.

CAR 61-62.

As an initial matter, the above-cited portion of the hearing transcript contradicts plaintiff's assertion that the ALJ impeded questioning by plaintiff's counsel.  Instead, the ALJ informed plaintiff's counsel that he was free to use Dr. Gottschalk's MRFCA to question the VE, and the transcript shows that plaintiff's counsel thereafter voluntarily stopped his questioning.

Nevertheless, the ALJ is still required to incorporate all the substantial, supported limitations and restrictions of the particular claimant in the hypothetical.  Magallanes, 881 F.2d at 756.  However, here the ALJ's failure to include the above limitation was harmless, because the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  In Hoopai, a medical

6

source determined that the claimant was moderately limited in "his ability to maintain attention

and concentration for extended periods; his ability to perform activities within a schedule,

maintain regular attendance, and be punctual with customary tolerance; and *his ability to*

*complete a normal workday and workweek without interruption from psychologically-based*

*symptoms and to perform at a consistent pace without an unreasonable number and length of*

*rest periods.*" Id. (emphasis added).  After the ALJ utilized the grids at step five to determine

that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to

seek vocational expert testimony regarding the limitations assessed.  Id. at 1075.  The Ninth

Circuit rejected this argument, holding that these moderate limitations were not sufficiently

severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert.

Id. at 1077.

Moreover, Dr. Gottschalk's MRFCA otherwise indicates that plaintiff is not

significantly limited in a majority of the functional categories, capable of doing detailed and

complex tasks (without significant, close, coordinated interactions), and able to adapt to change

in work routine.  CAR 222-24.  Accordingly, any error in omitting the above limitation from the

hypothetical was harmless and does not warrant reversal.  See  Curry v. Sullivan, 925 F.2d 1127,

1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security

cases).

## B.    TREATING PHYSICIAN OPINION/LISTING

Plaintiff further contends that the ALJ failed to consider the opinions of plaintiff's

treating physicians regarding her mental health condition.  Upon careful review, however, it

appears that plaintiff actually argues that the ALJ erred at step three in the sequential disability

analysis by finding that plaintiff's mental impairments do not meet or equal a listing.

The Social Security Regulations "Listing of Impairments" is comprised of

impairments to certain categories of body systems that are severe enough to preclude a person

from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

1   C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

2   irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

3   the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

4   1985).  To meet a listed impairment, a claimant must establish that she meets each characteristic

5   of a listed impairment relevant to her claim.   To equal a listed impairment, a claimant must

6   establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the

7   characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to

8   the listed impairment most like the claimant's impairment.  20 C.F.R. § 404.1526.  A finding of

9   equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).

10          Plaintiff asserts that "[t]he reasoning of the ALJ is faulty as the medical records

11  showed more than four criteria under A. 1 of 12.04...."  Pl.'s Mot. 17.  Listing 12.04 relates to

12  affective disorders, "[c]haracterized by a disturbance of mood, accompanied by a full or partial

13  manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole

14  psychic life; it generally involves either depression or elation.  The required level of severity for

15  these disorders is met when the requirements of *both* A and B are satisfied, or when the

16  requirements in C are satisfied."  20 C.F.R. Part 404, Subpart P, App'x 1, Listing 12.04

17  (emphasis added).

18          Contrary to plaintiff's assertion, there is essentially no dispute that she satisfied

19  the A.1 criteria of Listing 12.04.[4]  In fact, the ALJ stated:

20              Due to the severity of claimant's mental impairments, the
21              undersigned has carefully considered whether these impairments
                meet the requisite criteria found in any of the section 12.00 listings.
22              In this case, because the evidence on record shows that the

23      [4] The A.1 criteria of Listing 12.04 requires "[m]edically documented persistence, either
24  continuous or intermittent, of...1. Depressive syndrome characterized by at least four of the
    following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite
25  disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or
    retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty
26  concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions or paranoid
    thinking...."  20 C.F.R. Part 404, Subpart P, App'x 1, Listing 12.04.

8

1
2  claimant's impairments are characterized by sadness and emotional
   pain associated with family loss, problems with memory and
3  concentration, poor motivation, a lack of pleasure, and variable
   sleep; it is necessary to evaluate her degrees of limitation utilizing
4  the "B" criteria of sections 12.02 and 12.04[5] in order to determine
   whether her impairments meet or equal the listing.

5  CAR 13.

6          The Part B criteria evaluate the functional loss resulting from the disorder and

7  require at least two of the following functional limitations:

8                  1.  marked restriction of activities of daily living;
                   2.  marked difficulties in maintaining social
9                      functioning;
                   3.  marked difficulties in maintaining concentration,
10                     persistence, or pace; or
                   4.  repeated episodes of decompensation, each of
11                     extended duration.

12  20 C.F.R. Part 404, Subpart P, App'x 1, Listing 12.04.  "Marked" means "more than moderate,

13  but less than extreme."  See Listing 12.00(C).

14          The ALJ found that the Part B criteria were not satisfied:

15  Upon review of the medical evidence on record, the undersigned
    has determined that the claimant has mild restrictions in her
16  activities of daily living, moderate difficulty in maintaining social
    functioning, mild deficiencies of concentration, persistence, or
17  pace, and has not experienced frequent episodes of
    decompensation in a work-like setting.  Accordingly, the
18  undersigned finds that the claimant's impairments, although
    severe, do not meet or equal the criteria of sections 12.02 or 12.04.

19  CAR 13.

20          The ALJ's finding is supported by substantial evidence in the record as a whole.

21  None of plaintiff's treating psychiatrists or psychologists submitted an assessment of plaintiff's

22  functional limitations.  The only examining psychiatrist to submit such an assessment was

23  consultant Dr. Bradley Daigle, who evaluated plaintiff on November 15, 2006.  CAR 199-203.

24

25          [5]  The Part B criteria are the same for Listings 12.02 (organic mental disorders) and 12.04
26  (affective disorders).  The ALJ apparently evaluated plaintiff for both listings.

1  Based on a comprehensive psychiatric evaluation, Dr. Daigle assessed plaintiff as not

2  significantly limited in her ability to understand, remember, and carry out simple one or two-step

3  job instructions; very slightly limited in her ability to follow detailed and complex instructions;

4  slightly limited in her ability to maintain concentration, attention, persistence, and pace, as well

5  as in associating with day-to-day work activity including attendance and safety; and moderately

6  limited in her ability to relate and interact with supervisors, co-workers, and the public, as well as

7  in adapting to the stresses common to a normal work environment.  CAR 202.  Subsequently, on

8  December 1, 2006, State Agency physician Dr. Lon Gottschalk reviewed plaintiff's prior records

9  and completed a psychiatric review technique form specifically evaluating the Part B criteria.

10  CAR 208-21.  He assessed mild restriction of activities of daily living; moderate difficulties in

11  maintaining social functioning; mild difficulties in maintaining concentration, persistence, or

12  pace; and found insufficient evidence of episodes of decompensation.  CAR 218.  Dr. Daigle and

13  Dr. Gottschalk's findings are generally consistent with each other, and neither found marked

14  limitations or evidence of repeated episodes of decompensation as required to satisfy the Part B

15  criteria.

16          Although Plaintiff points to a subjective report from her daughter,[6] her various

17  diagnoses, past events that led to her mental conditions, her medications, and her psychiatric

18  treatment since 2001, Plaintiff fails to cite any medical or psychiatric evidence in the record

19  establishing that she meets or equals the Part B criteria of Listing 12.04.  As discussed above,

20

21

22

23          [6] The Court notes that some of the statements in plaintiff's brief attributed to plaintiff's
    daughter are somewhat misleading when compared to the evidence in the record.  For example,
24  the brief suggests that plaintiff is "unable to function on a daily basis," and cites as an example
    the fact that plaintiff's daughter indicated that plaintiff cannot handle a savings account or use a
25  check book.  Pl's Mot. 16.  However, the brief omits plaintiff's daughter's explanation that
    plaintiff has no checking account, but that she is able to pay bills and count change.  CAR 128.

26

1    *both* the part A and B criteria must be satisfied for a listing under 12.04.[7]  Accordingly, the ALJ's

2    finding that plaintiff's mental impairments do not meet or equal a listing is free of legal error and

3    supported by substantial evidence in the record as a whole.

4                    **C.  EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

5                    Finally, plaintiff contends that the Appeals Council erred in failing to remand the

6    case for a hearing on additional evidence submitted after the ALJ's hearing.

7                    When the Appeals Council denies review, the decision of the ALJ is the final

8    decision.  Russell v. Brown, 856 F.2d 81, 83-84 (9th Cir. 1988).[8]  However, any new evidence

9    considered by the Appeals Council in denying the request for review becomes part of the

10   administrative record for review by this court.  See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th

11   Cir. 1993); see also  Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000), cert. denied, 531

12   U.S. 1038 (2000) (the court may properly consider the additional materials because the Appeals

13   Council addressed them in the context of denying appellant's request for review).  To justify a

14   remand, the claimant must show that the new evidence is material, i.e. that there is a reasonable

15   possibility that the new evidence would have changed the outcome of the administrative hearing.

16   Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001.)  Additionally, new evidence will be

17   considered only if it relates to the period on or before the date of the administrative law judge

---

19   [7]  A listing under 12.04 can also be attained by satisfying the criteria of Part C:
20   "Medically documented history of a chronic affective disorder of at least 2 years' duration that
     has caused more than a minimal limitation of ability to do basic work activities, with symptoms
     or signs currently attenuated by medication or psychosocial support, and one of the following: 1.
21   Repeated episodes of decompensation, each of extended duration; or 2. A residual disease
     process that has resulted in such marginal adjustment that even a minimal increase in mental
22   demands or change in the environment would be predicted to cause the individual to
     decompensate; or 3. Current history of 1 or more years' inability to function outside a highly
23   supportive living arrangement, with an indication of continued need for such an arrangement."
     20 C.F.R. Part 404, Subpart P, App'x 1, Listing 12.04.  Plaintiff does not argue that she meets
24   the Part C criteria, nor does the record contain evidence that would support such a finding.

25   [8]  Only if the Appeals Council grants review and then issues a decision on the merits does
     the Appeals Council's decision become the final decision of the Commissioner.  Russell, 856
26   F.2d at 83-84.

1    hearing decision.  20 C.F.R. § 416.1476(b).

2              Although most of the records plaintiff submitted to the Appeals Council are

3    progress reports concerning her primary care, see CAR 301-321, plaintiff's argument for remand

4    is primarily based on three documents relating to her mental health.  The first is one page[9] from a

5    document titled "Medical Source Statement - Mental" dated December 29, 2008 and signed by

6    Dr. Robert McCarron of Primary Care.  CAR 6.  The statement assesses plaintiff's ability to

7    interact with the public, interact with co-workers, interact with supervisors, adapt to changes in

8    the workplace, and to be aware of normal hazards and react appropriately as "poor."  Id.  The

9    only medical findings listed that support this assessment are "anxiety/depression."  Id.  Plaintiff's

10   prognosis was listed as "fair."  Id.  Even though the document indicates that Dr. McCarron last

11   saw plaintiff on the date of this assessment, there is no indication of how long he has been

12   treating her, whether a psychiatric or psychological evaluation was conducted, and what Dr.

13   McCarron's specialty and qualifications are to opine on plaintiff's mental health.  Id.  Plaintiff

14   contends that Dr. McCarron's assessment "specifically shows that Plaintiff meets the criteria [for

15   listing] under 12.02, 12.04, and probably 12.06 and as such it is material...."  Pl's Mot. 18.  The

16   Court disagrees.  Not only does this December 29, 2008 assessment not relate to the relevant

17   period prior to the ALJ's October 22, 2008 decision, but it is also entirely conclusory and

18   unsupported by medical or psychiatric findings.  As such, there is no reasonable possibility that it

19   would have changed the outcome of the administrative proceeding.  See Crane v. Shalala, 76

20   F.3d 251, 253 (9th Cir. 1996) (opinions in form of "check-off reports" without explanation of the

21   bases of conclusions properly rejected); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)

22   (opinions that are "brief and conclusionary in form with little in the way of clinical findings" are

23   insufficient).

24              The second document plaintiff cites is another December 29, 2008 record which

25   _____

26        [9]  It appears that the first page of the document is missing, because it starts on page 2 of
     the document with chart no. 3 at the top of the page.  See CAR 6.

                                                12

1    appears to be a primary care treatment report by a Dr. Siler.  CAR 307-08.  Although this

2    document contains a more thorough discussion of plaintiff's symptoms at the time of the

3    assessment, it does not directly pertain to the relevant time period.  For example, Dr. Siler states

4    that plaintiff reported "worsening depressed mood in the past month," which clearly relates to a

5    period after the ALJ's October 22, 2008 decision.  CAR 307.  Moreover, to the extent Dr. Siler's

6    notes outline plaintiff's reported history and prior complaints within the relevant period, these

7    were adequately documented in the record before the ALJ.  Additionally, Dr. Siler assessed a

8    GAF[10] of 55, which is consistent with the moderate symptoms and limitations found in earlier

9    psychiatric assessments already considered by the ALJ.  Accordingly, it is not reasonably

10   possible that the ALJ would have reached a different result based on this document.

11           Finally, plaintiff also refers to an October 20, 2008 primary care treatment record

12   indicating that plaintiff had reported concerns of increased depression and "bad nerves," that her

13   mood was "down," and diagnosing her with a major depressive disorder and anxiety disorder.

14   CAR 312.  However, this report generally references the same complaints and diagnoses that

15   were already in the record before the ALJ.  Also, the report indicates that her depression was

16   moderate and that the increase in severity was "temporally related" to plaintiff running out of her

17   medication.  Id.  A review of the record reveals numerous instances where plaintiff missed

18   medical appointments and ran out of her medication, sometimes for months at a time,

19   aggravating her conditions and symptoms.  See e.g. CAR 189-91, 195-97, 297, 299.  In fact,

20   doctors have noted that she is less depressed, tearful, and irritable on her medication.  See e.g.

21   CAR 228.  Generally, a condition which can be controlled or corrected by medication is not

22   disabling.  See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's

23

24           [10]  GAF is a scale reflecting "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
     Disorders 34 (4th ed. 2000) ("DSM IV").  According to the DSM IV, a GAF of 51-60 indicates

25   "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR
     moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with

26   peers or co-workers)."  Id.

1   Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440

2   (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).  For these

3   reasons, there is no reasonable possibility that this document would have changed the outcome of

4   the administrative proceeding.

5                   In sum, because the new evidence plaintiff submitted to the Appeals Council is

6   neither outcome determinative nor material, any failure by the Appeals Council to specify its

7   reasons for rejecting the evidence is harmless error and does not require reversal.  See Curry, 925

8   F.2d at 1129 (harmless error analysis applicable in judicial review of social security cases).

9                                    **IV.  CONCLUSION**

10                  For the foregoing reasons, IT IS HEREBY ORDERED that:

11                  1.  Plaintiff's motion for summary judgment (Doc. 16) is denied;

12                  2.  Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

13                  3.  The Clerk of the Court is directed to enter judgment for Defendant and close

14   this file.

16   DATED: September 12, 2011

18                                    **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

22   mcmillon.ss.cmk

14